**CHIPMAN CHEMICAL ENGINEERING CO., Inc., v. READE MFG. CO., Inc.**

District Court, D. New Jersey.
March 2, 1932.

Nathan & Bowman, of New York City, for complainants.

Lewis J. Doolittle, of New York City, for defendant.

FAKE, District Judge.

This is an infringement suit based upon United States letters patent No. 1,694,205 covering a weed killer and a method of killing weeds granted to one Ralph Chipman, December 4, 1928, and by him assigned to the plaintiff herein. The defendant denies infringement and alleges invalidity of the patent upon the ground of prior disclosures, specially pleaded in the answer.

Claim 7 of the patent reads as follows: 7. "The art of wilting green weeds of mixed origins and of retarding secondary germinations thereof which consists in spraying the leaves thereof with an aqueous solution composed of the chlorate of an alkaline earth base and common salt whereby the chlorate may decompose by destructive contact with the organic tissue to produce a highly hygroscopic chloride of said base and thereafter cooperate with said common salt to retard secondary growths."

In practice, the plaintiff manufactures and sells a product which is named and known in the trade as "etlacide," the formula for which is set out in line 68 on page 1 of the specifications, as follows: 2 NaClO₃ plus CaCl₂ equals Ca(ClO₃)₂ plus 2 NaCl, which, otherwise stated, is sodium chlorate plus calcium chloride equals calcium chlorate plus sodium chloride.

Most of the testimony at the trial centered upon problems concerning the above formula. The experts were in agreement that it presents a balanced equation, and that it is of such a nature that chemists would recognize it as a demonstration of skill in chemistry, but the defendant contends that the formula does not prove that the chemical combination of the chlorate with the calcium and the chemical combination of the chloride with the sodium actually occurs in the aqueous solution, since the only known method of analysis requires precipitation under heat and the addition of alcohol as a foreign element. From which it is argued that the processes of analysis cause a manufacture of the chlorate and chloride each chemically reacted as shown by the formula; hence, it would follow that, when sodium chlorate and calcium chloride are dissolved in water and used as a spray, it is not to say that such solution contained calcium chlorate and sodium chloride and plaintiff fails in his burden to establish the formula. However that may be, it is of no great moment here, since it is not to be

assumed that either the inventor or this court is called upon to explain the infinite operations of nature which may take place in this combination of solids, gases, and liquids, and if it is made to appear that the formula presents a new and better effect in the method or art of killing weeds than was shown by any prior disclosure, and it comes within the claims of the patent, it is valid as an invention.

Chipman's formula produces two virtues or characteristics; one of which is a marked improvement over any prior disclosure in that it is noncombustible, and the other lies in its herbicidal effect upon weeds of marine origin. Sodium chlorate as a practical weed killer was disclosed by Truffaut in his French patent in 1918, but its use was very objectionable because of fire hazard, and the salt thereof was also a defect in that it encouraged the growth of weeds of marine origin. See Charpilloz et al. v. Reade Mfg. Co. (C. C. A.) 51 F.(2d) 736.

Inasmuch as it appears that the infringements complained of here are, if anything, infringements of the formula, it becomes necessary to compare the formula with the claims of the patent, and I am of the opinion that claim 7 above quoted is the nearest approach to it.

Bearing in mind that Truffaut had taught the use of sodium chlorate as a weed killer, and that Chipman here specifies calcium chlorate, we examine claim 7 and find that it covers an "aqueous solution of the chlorate of an alkaline earth base and common salt." The chlorates of alkaline earth base include calcium and exclude sodium, so we find that this claim covers calcium chlorate and the common salt chemically known as sodium chloride. I incline to the view, however, that the statement in the claim to the effect that this aqueous spray produces a "highly hygroscopic chloride of said base" is an error, since I accept the conclusion that the spray contains calcium chlorate and sodium chloride as set forth in line 68, page 1, of the specifications. The art or method involved consists in the use of the sodium chlorate and calcium chloride, thereby producing the presence in the solution of calcium chlorate and sodium chloride and the application of the same as a spray for wilting and killing weeds.

That the solution constitutes an advance in the art of killing weeds is fully born out by the evidence as to its nontoxic, noncombustible, and noncorrosive qualities as well as the evidence as to its lethal effect upon weeds

of marine origin and the further fact of its recognition and success on the market.

That the inventor is in error when he claims the spray is of a calcium chloride base, when chemically it is not, ought not to be taken against him, since the two dissolved chemicals he mentions actually do the work he claims for them, and what actually takes place or transposes in the spray and in the vegetation it attacks is beyond the limitations of our finite knowledge.

I have spent many interesting hours in an attempt to make a comparison of the formula with claim 10, but I must reluctantly confess, wholly without results. Chipman's answer to question 51 is susceptible of so many interpretations as applied to the formula and to the language of that claim that I have been left in confusion wherever I have turned with it. I find, however, that claim 7 is valid, that it covers the formula, and that defendant has infringed.

A decree will be entered in conformity with these conclusions.